IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BENJAMIN D. LIMOR          )
                           )
v.                         )   No. 3:20-cv-1083
                           )
KILOLO KIJAKAZI[1]         )
Commissioner of Social Security )


**To:** The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") as provided under Title II of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 20), to which Defendant has filed a response. (Docket No. 25.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 3.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 20) be **DENIED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

Case 3:20-cv-01083   Document 26   Filed 03/11/22   Page 1 of 16 PageID #: 2446

# I. INTRODUCTION

Plaintiff filed an application for DIB on September 25, 2018. (*See* Transcript of the Administrative Record (Docket No. 12) at 105).[2] He alleged that he was unable to work, as of the alleged disability onset date of September 20, 2017, because of psoriatic arthritis, diabetes, obesity, high blood pressure, depression, chronic kidney stones, hypertrophic cardiomyopathy, anemia, a spastic colon, and chronic muscle fatigue. (AR 15, 114.) The application was denied initially on March 1, 2019, then denied again upon reconsideration on July 22, 2019. (AR 15.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Robert Martin on May 14, 2020. (AR 36.) The ALJ denied the claim on June 1, 2020. (AR 12-14.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on October 15, 2020 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner.

On December 18, 2020, Plaintiff filed a complaint in this Court seeking review of the ALJ's decision (Docket No. 1), but his attorney, Peter Skeie, failed to effectuate service of process on Defendant within the 90 days required under Rule 4(m) of the Federal Rules of Civil Procedure. Nonetheless, Defendant proceeded to file both an answer to the complaint and the administrative record on August 13, 2021 (Docket No. 11), thus mooting the issue of timely service.

On August 16, 2021, the Court entered an order requiring Plaintiff to file a motion for judgment on the administrative record within 28 days of entry of the order. (Docket No. 13.) However, as is his habit, Mr. Skeie failed to file a motion by the imposed deadline. Instead, more than a week after the deadline had lapsed, Mr. Skeie filed a "motion to continue dispositive motion

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

deadline," which made no effort to address his tardiness and included no indication that he had complied with requirements set forth in the Local Rules for filing a motion for an extension. (Docket No. 15.) The Court entered an order requiring Mr. Skeie to show cause why his failure to comply with Court orders should not result in dismissal of the complaint. (Docket No. 16.)

Most attorneys would have promptly provided such an explanation if for no other reason than to spare their client from suffering adverse consequences. However, Mr. Skeie, in further dereliction of duty to his client, did not bother to respond to the show cause order. Accordingly, the undersigned Magistrate Judge issued a Report and Recommendation on October 15, 2021, which recommended dismissal of the complaint. (Docket No. 17.) On November 12, 2021, the District Judge—acknowledging "that the Magistrate Judge had legitimate and substantial grounds for denying the plaintiff's motion to extend the filing deadline, for issuing the show-cause Order, and for recommending dismissal of this case upon the plaintiff's failure even to respond to the show-cause Order"—rejected the Report and Recommendation and afforded Plaintiff "one more opportunity to submit his claims on the merits" by ordering that a motion for judgment on the administrative record be filed by December 3, 2021. (Docket No. 19 at 2-3.)

Incredibly, although simultaneously unsurprisingly, Mr. Skeie failed to file a motion by the December 3 deadline. (Docket No. 20.) This continued lack of regard for the Court's orders presents a more than sufficient basis for dismissal under Rule 16(f) of the Federal Rules of Civil Procedure. The legal standards for dismissal under Rule 16(f) are discussed in the prior report and recommendation. (Docket No. 17 at 2-5.) The Court finds the factors supporting dismissal under Rule 16(f) are even more compelling given the additional missed deadline that was expressly characterized as Plaintiff's one last opportunity. Nevertheless, the Court will afford Plaintiff a second last opportunity for consideration of his claims on the merits as presented in Mr. Skeie's

3

seemingly inexhaustible supply of belated filings: the memorandum filed in support of Plaintiff's motion for judgment on the administrative record. (Docket No. 21.)

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.

2. The claimant has not engaged in substantial gainful activity since September 20, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: psoriatic arthritis, dysfunction major joints-bilateral knees, degenerative disc disease of the lumbar, diabetes mellitus, morbid obesity, sleep apnea, valvular heart disorder, depression, and attention deficit hyperactivity disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and occasionally stoop, crouch, kneel, crawl, and balance. He must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and work around hazardous machinery, moving parts, vibrations, and unprotected heights. He is limited to simple, routine, repetitive tasks and simple work-related decisions. He can interact appropriately with supervisors, co-workers, and the general public. He can adapt to occasional changes in the workplace. He can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 12, 1971 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2017, through the date of this decision (20 CFR 404.1520(g)).

(AR 17-28.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision will be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of*

5

*Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed him to perform a range of sedentary work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 17-28.)

### C. Plaintiff's Assertions of Error

Plaintiff presents two assertions of error: (1) that the ALJ improperly concluded that recurrent kidney stones did not represent a severe impairment; and (2) that the ALJ "failed to consider the issue of absenteeism." (Docket No. 21 at 3, 7.) Plaintiff therefore requests "an order instructing payment of benefits," or, alternatively, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 10.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all

7

essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

### 1. Step Two Findings.

Although the ALJ concluded that Plaintiff suffered from multiple severe impairments at step two of the five-step analysis, the ALJ determined that "recurrent kidney stones" did not meet the 12-month durational requirement of 20 C.F.R. § 404.1509 and thus did not represent a severe impairment under 20 C.F.R. § 404.1520(c). (AR 17.) Plaintiff argues that, in so finding, the ALJ "abused his discretion" and committed reversible error. (Docket No. 21 at 7.)

An impairment is deemed "severe" at step two if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The claimant bears the burden of proving such limitations have lasted or are expected to last for a continuous period of at least 12 months, *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012), although step two is considered "a *de minimis* hurdle that a claimant clears unless the impairment is only a slight abnormality that minimally affects work ability." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal citation and quotations omitted). The Sixth Circuit has even characterized the severity standard as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Yates v. Colvin*, 940 F. Supp. 2d 664, 675 (S.D. Ohio 2013) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988)) (internal quotations omitted).

Plaintiff recites an array of office notes to bolster his contention that ongoing kidney stones meet this standard. He reported recent passage of stones to providers in December 2016, January

2018, and October 2018. (AR 311, 1113-14, 1766.) He underwent procedures to remove stones in June 2017, October 2017, and February 2018. (AR 741-42, 1124-25, 1254-55.) He went to the emergency room two days after the October procedure with reports of ongoing right flank pain, although this appears to have resolved with antibiotics. (AR 1049, 1052.) Overall, Plaintiff has described the presence of kidney stones as "intermittent" since 2016, presenting three to four times per year. (AR 1751, 1883.)

Plaintiff endured a more severe experience on April 5, 2019, when he was hospitalized for sepsis secondary to ureteral stones, although it was later suspected that the stones had already passed by the time of his admission. (AR 1919, 1957.) He was discharged on April 12 with instructions to continue using oral antibiotics. (AR 1919.) During a follow-up visit the next month, Plaintiff's provider noted that he had "done well" and that his urinary tract symptoms were controlled. (AR 1779, 1782.)

The ALJ provided the following justification for finding Plaintiff's condition—also referred to as "nephrolithiasis" (AR 1766)—to be non-severe:

> As discussed below, [he] has had to have kidney stones surgically removed on several occasions. On one occasion, he became septic and was briefly hospitalized due to kidney issues. However, he improved quickly with antibiotics. While certainly more than minimally limiting when the condition is active, the record shows the claimant's kidney stones are usually resolved within a few weeks of the first complaints with surgery or other treatment. Thus, they do not satisfy the 12-month durational requirement for a severe impairment.

(AR 18.) Plaintiff insists that this conclusion is erroneous based on the "time frame of documented recurrent kidney stones running from December 2, 2016, through May 13, 2019." (Docket No. 21 at 5). However, the Court sees no reversible error in the ALJ's step two findings. Plaintiff's description of the relevant timeframe misleadingly suggests that the condition affected Plaintiff on a continuing basis. Recurrent kidney stones are more accurately characterized as an episodic

9

disease, which requires specific consideration of the "frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities." *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990).

During the 25-month period at issue here—between the alleged onset date of September 20, 2017, and the last reported kidney stone on May 13, 2019—the record shows around six episodes of nephrolithiasis: Plaintiff reported kidney stones in January and September/October 2018, and in May 2019; he underwent outpatient procedures to remove stones in June and October 2017 and in February 2018; and, suffered one acute episode requiring hospitalization in April 2019. This yields an average of one stone-related incident every four to five months during the relevant time period. Such a frequency ostensibly falls short of the "continuous" prong of the durational requirement and appears to be in harmony with the ALJ's finding that Plaintiff's condition was "more than minimally limiting *when the condition is active*" but not normally material (AR 18) (emphasis added), which weighs against Plaintiff's position.

The records documenting Plaintiff's treatment for kidney stones provide further support for the ALJ's step two determination. Plaintiff repeatedly reported during office visits that the associated flank pain symptomatic of nephrolithiasis did not limit his daily activities. (AR 868, 1113, 1673, 1766, 1774.) His treating provider, Dr. Benjamin Dehner, confirmed that Plaintiff was not subject to any physical limitations due to the condition. (AR 1676, 1777.) Even after the acute episode in April 2019 resulting in hospitalization, Dr. Dehner noted that Plaintiff's lower urinary tract symptoms were "controlled" and that he was doing well. (AR 1782.) And Plaintiff's most recent CT scan revealed no kidney stone formation or any evidence of obstructive uropathy. (AR 2014.) Such minimal findings tend to support the ALJ's conclusion that recurrent kidney stones do not represent a severe impairment. *See Berkowski v. Comm'r of Soc. Sec.*, 652 F. Supp.

2d 846, 851-55 (E.D. Mich. 2009) (finding that a history of treatment for kidney stones that included 12 surgeries did not rise to step two severity because there was "no evidence in the record that the kidney stones cause more than minimal deficits").

Finally, as noted by Defendant, an ALJ's failure to find that a particular impairment is "severe" at step two is subject to harmless error review. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). Indeed, the Sixth Circuit has made clear that such an omission is generally irrelevant if the ALJ finds the existence of at least one other severe impairment—as is the case here—and bases the ultimate disability finding upon the cumulative effect of all the claimant's impairments, both severe and non-severe. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). *See also Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("When an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error.") (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987)) (cleaned up).

The Court finds that the ALJ in this case appropriately considered the totality of Plaintiff's conditions. The ALJ discussed Plaintiff's history of recurrent kidney stones throughout the administrative opinion, which included Dr. Dehner's positive prognosis and the absence of any impact on Plaintiff's daily activities. (AR 18, 21-23, 873, 1673.) The ALJ also highlighted the diagnoses of the consultative examiner, Dr. William Huffman, which included "history of kidney stones," and determined that the accompanying limitations in Dr. Huffman's report were "generally persuasive." (AR 23, 26, 1754-55.) There is therefore ample evidence that the ALJ properly assessed the impact of kidney stones in formulating the RFC, and Plaintiff points to no evidence indicating that the condition continues to limit him physically, which renders harmless

11

any error the ALJ may have committed by finding that it does not represent a severe impairment. *See Foley v. Comm'r of Soc. Sec.*, No. 16-10574, 2017 WL 1682557, at *8 (E.D. Mich. Feb. 16, 2017), *report and recommendation adopted*, No. 16-10574, 2017 WL 1130089 (E.D. Mich. Mar. 27, 2017) (holding that any error by declining to designate nephrolithiasis a severe impairment was "entirely harmless" because the claimant identified no evidence "suggesting that his alleged kidney impairment limited him in any way or imposed any work-related limitations").

Plaintiff nonetheless argues that the ALJ failed to consider his testimony regarding the impact of fatigue allegedly caused by a diuretic prescribed to treat the condition. (Docket No. 21 at 6.) Yet both the testimony cited in his brief and the function report he completed as part of his application for benefits indicate that it was medication used to treat psoriatic arthritis (Rasuvo and Cosentyx), and not kidney stones, that purportedly caused symptoms of fatigue. (AR 57, 224.)[3] Regardless, the ALJ did in fact discuss Plaintiff's reports of fatigue in the administrative opinion before ultimately concluding that Plaintiff's subjective complaints regarding his ongoing symptoms were "inconsistent or less than fully supported by the substantial evidence as a whole." (AR 23, 25.) Given that Plaintiff points to no opinion in the record suggesting that fatigue prevents him from working within the parameters of the RFC formulated by the ALJ, the Court finds no error in the ALJ's step two analysis. And as discussed above, to the extent the ALJ did err in

---

[3] The relevant testimony includes the following statement: "I have really bad fatigue when I take both of my arthritis medications, the injections, and also from my diuretic, *I have to use the bathroom between 10 and 20 times a day*." (AR 57) (emphasis added). The emphasized portion of this statement was conveniently omitted from counsel's recitation of the quote in his brief, which made it appear as if Plaintiff had attributed his experience of fatigue to the diuretic. (Docket No. 21 at 7.) In reality, Plaintiff testified rather unsurprisingly that his prescribed diuretic promoted diuresis, or an increased production of urine, which resulted in an increase in the number of daily bathroom trips. And notably, Plaintiff reported to his provider that his increased urinary frequency did not limit his activities. (AR 1766, 1774, 1779.)

12

determining that Plaintiff's recurrent kidney stones do not represent a severe impairment, such error is harmless. This assertion of error is therefore rejected.

### 2. Absenteeism

Plaintiff's next assertion of error centers on the testimony provided by a vocational expert during the administrative hearing. An ALJ is permitted to rely on testimony from a designated vocational expert "concerning the availability of suitable work" for the claimant, and such testimony "may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001 (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). It is well-established that in fashioning a hypothetical question to the vocational expert regarding a claimant's functional capacity, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact". *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

During the hearing, the ALJ asked the vocational expert whether a hypothetical individual who, during an eight-hour workday, would require at least four unscheduled work breaks and would be absent more than two days per month would be able to maintain employment in the national economy. (AR 61.) The vocational expert responded that such conditions would preclude employment based on his judgment that employers typically allow only one absence per month. (AR 61.) The ALJ declined to include anything about absenteeism in the RFC formulation, instead opting to base the RFC on restrictions posed to the vocational expert in other hypotheticals. (AR 58-62.)

13

Plaintiff essentially argues that the ALJ erred by failing to adopt the two absences per month restriction, which would have resulted in a finding of disability. The Court disagrees. It bears reiterating that the ALJ need only incorporate into the RFC those limitations "which he finds credible and supported by the record." *Berkowski*, 652 F. Supp. 2d at 861. Here, the ALJ found no basis for concluding that Plaintiff would be required to miss two or more days of work each month due to any condition, a determination which seems to be borne out by the absence of any opinion from a provider or anyone else suggesting that he would be. The ALJ was not required to adopt as part of the RFC all of the functional limitations posed to the vocational expert through various hypotheticals during the administrative hearing, particularly those that are not supported by the record.

The lack of any evidence suggesting that Plaintiff would be unavailable two days each month also distinguishes this matter from the two cases cited in support of his position. In *Nowling v. Colvin*, the Eighth Circuit reversed a non-disability finding based on the ALJ's failure to "evaluate fully" testimony provided by a vocational expert regarding excessive absenteeism that was consistent with a treating provider's opinion that the claimant's seizures would cause her to miss more than four days per month. 813 F.3d 1110, 1116, 1120-21 (8th Cir. 2016). A similar distinction can be found in this Court's decision in *King v. Berryhill*, which reversed a non-disability decision based on the ALJ's failure to acknowledge a letter from the subject claimant's supervisor indicating that the claimant habitually missed more than eight days of work every month. No. 3:13-0451, 2017 WL 1153961, at *11 (M.D. Tenn. Mar. 28, 2017).

In contrast, and as noted by the ALJ, Plaintiff was fired from his most recent job not for health reasons but because of allegations that he was being disruptive and using profanity during a conference call. (AR 25-26, 41.) Termination from employment for reasons unrelated to any

alleged disability "casts doubt on the reasons they are not working," *Mendiola v. Soc. Sec. Admin.*, No. 3:15-cv-0995, 2016 WL 5800470, at *5 (M.D. Tenn. Sept. 30, 2016) (citing *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004)), and undermines Plaintiff's current suggestion that he would be excessively absent from any job.

In lieu of evidence, Plaintiff relies on a tally of the days on which he saw a medical provider between September 2017 and December 2019—by his count, eight days in 2017, 22 days in 2018, and 24 days in 2019 (Docket No. 21 at 8-9)—to argue that such frequency would result in at least two absences per month. Overlooking the fact that several of the dates cited in Plaintiff's brief fell on weekends, the mere existence of repeated medical visits is not sufficient to demonstrate an inability to attend work regularly; instead, "there must be evidence such as a medical source opinion about the likelihood of absenteeism caused by the claimant's impairments and the need for treatment during working hours." *Swafford v. Comm'r of Soc. Sec.*, No. 1:12-CV-19, 2013 WL 1196590, at *1 (S.D. Ohio Mar. 25, 2013). *See also Bray v. Comm'r of Soc. Sec.*, No. 1:13-CV-00040, 2014 WL 4377771, at *3 (S.D. Ohio Sept. 3, 2014) (rejecting claimant's assertion that medical appointments would preclude full-time work given the absence of "specific affirmative evidence" indicating that the claimant "would have to be absent from work frequently during normal work hours and that those frequent absences likely would impair the [claimant's] ability to work"). Without such evidence here, the Court finds that substantial evidence supports the ALJ's RFC formulation and thus rejects this assertion of error.

15

Case 3:20-cv-01083    Document 26    Filed 03/11/22    Page 15 of 16 PageID #: 2460

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 20) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge